**TEXAS AMERICAN BANK, Appellant,**

v.

**Melton Eldon BOGGESS, Appellee.**

No. 2–84–033–CV.

Court of Appeals of Texas,
Fort Worth.

June 27, 1984.

Shannon, Gracey, Ratliff & Miller, and David E. Keltner and H. Clay McGuffey, Fort Worth, for appellant.

Law Offices of Massie Tillman, Massie Tillman and Lexa Auld, Fort Worth, for appellee.

Before HUGHES, JORDAN and JOE SPURLOCK, II, JJ.

OPINION

JORDAN, Justice.

Texas American Bank, referred to as the Bank, appeals from an adverse judgment in a suit brought against it by Boggess for negligent hiring of a repossessor of vehicles which the Bank had financed and taken a security interest in. The cause was submitted to the jury on the issues of whether or not the Bank was negligent in engaging Terry Cecil as a repossessor of Boggess' vehicle and whether that negligence, if any, was a proximate cause of personal injuries to Boggess. The jury returned a verdict in Boggess' favor of $120,-600 and the court, after overruling a motion for directed verdict by the Bank, reduced the damages to $104,600 and entered judgment for that amount.

Although six points of error are raised in appellant's brief, this appeal is disposed of by our ruling on and discussion of only the first point of error.

The judgment is reversed and rendered.

The Bank's primary and underlying theory of defense to this action for negligent hiring is simply that under the facts of the case there was, as a matter of law, no proximate cause between the Bank's hiring of Terry Cecil, the repossessor, and the injury to appellee Boggess. The Bank, in connection with its first two points, also argues that there was no evidence, or in the alternative, insufficient evidence to support the jury's verdict.

In March of 1978 the Bank financed the purchase by Boggess of a 1978 Ford van, and Boggess signed a promissory note and security agreement whereby he was to make monthly payments on the loan. After making many late payments on the note, Boggess finally defaulted and by October of 1979 had failed to make three monthly installments on the note, the last payment having been made in July of 1979.

Prior to October 9, 1979, the Bank contacted both Boggess and his wife on several occasions, by telephone and by letter, and on September 5, 1979 sent Boggess a letter warning him that if the account was not made current, his van would be repossessed. These demands were not honored and no further payments were made on the loan.

The Bank in 1978 had engaged the services of Terry Cecil, who was in the business of repossessing vehicles for many lending institutions. The evidence showed that he had some fifty financial institutions as clients for whom he had done repossession work. His reputation for reliability and effectiveness among the various institutions with whom the Bank checked was good. The evidence at trial was that from September 1978 to October 9, 1979, Cecil had handled approximately 400 repossession matters for the Bank, with only one problem, evidence about which was introduced by appellee.

The record also reflects that Cecil was convicted of a felony sometime in the early 1970's, that he had served three years in prison, and was still on parole at the time of the October 9, 1979 repossession of appellee's van. There was evidence that Terry Cecil, within approximately one year of October 1979, had been involved in five vehicle accidents, but it revealed nothing about the fault or cause of any of these accidents.

It was primarily on this evidence that Boggess based his action for negligent hiring, and on which the court submitted the question as to negligence of the Bank in assigning the repossession of Boggess' van to Cecil. Sometime in early October of 1979, the Bank had assigned Terry Cecil the task of repossessing the van owned by Boggess, all efforts to collect the delinquent payments having failed. Without either the knowledge or consent of the Bank, Cecil assigned this particular repossession task to one Getzell Johnson Murrell.

During the early morning hours of October 9, 1979, Murrell went to the Boggess residence to repossess the van, and finding the van unlocked and the keys in the ignition, started to drive it off the premises. Boggess, awakened by his wife, who told him someone was stealing their van, dashed downstairs and out into the front yard of his residence. In attempting to stop Murrell from taking the van, Boggess was struck in some manner by the van and incurred serious injuries.

Boggess originally sued Terry Cecil, Getzell Johnson Murrell and the Bank, but prior to trial took a non-suit as to both Cecil and Murrell, leaving only the Bank as a party defendant. While Boggess originally had based his action against the Bank on several theories, all of these were abandoned and the cause was submitted to the jury on the questions of whether the Bank was negligent in assigning the Boggess van repossession to Terry Cecil and, if so, whether such negligence was a proximate cause of the occurrence of October 9, 1979. These were the first two issues, and the controlling issues for purposes of this appeal, in the court's charge. The jury answered "We do" to both issues.

■ Appellant's second point of error alleges error on the part of the trial court in overruling its motion for judgment notwithstanding the verdict because there was no evidence, or in the alternative, insufficient evidence to support the jury's finding of negligence on the part of the Bank in assigning this repossession to Terry Cecil. We hold that there was some evidence to support this finding of the jury and overrule the point. As previously stated, evidence of Cecil's criminal record and of his driving record was submitted, over objection, and we find that this evidence was sufficient to submit the issue to the jury and to support its finding thereon.

The significant and controlling question in this case is whether the hiring of Terry Cecil by the Bank to repossess vehicles on their behalf, was, or could be, under the facts recited above and contained in this record, a proximate cause of the occurrence of October 9, 1979 which resulted in Boggess' injuries. We hold, for the reasons to be stated, that the answer to this question is no.

In its first point of error, appellant Bank urges that as a matter of law there was no causation between the Bank's hiring of Cecil and Murrell striking Boggess with the van because, under the proven facts, there was no cause in fact, there was no proof that the accident was foreseeable as a result of the Bank's hiring of Cecil, and that there was no evidence or, in the alternative, insufficient evidence to support the jury's finding of proximate cause.

■ It is clear from the evidence in this record that Terry Cecil was an independent contractor. Ordinarily, an employer of an independent contractor is not legally responsible for the contractor's negligent acts. However, one hiring an independent contractor may be held responsible for his acts if the employer knew or should have known that the contractor was incompetent and a third person is injured because of such incompetency. *See* RESTATEMENT (SECOND) OF TORTS, sec. 411(a) and (b) (1965).

■■ Causation is obviously an essential element of the cause of action for negligent hiring. *Wm. Sommerville & Son, Inc. v. Carter*, 571 S.W.2d 953 (Tex.Civ. App.—Tyler 1978), *aff'd*, 584 S.W.2d 274 (Tex.1979). Before an act of negligence may be held to be a proximate cause of harm or injury, two elements must be shown: cause in fact and foreseeability. In *Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968), it was stated:

It is well settled that for a negligent act or omission to be the proximate cause of an injury, the injury must be the *natural and probable result* of the particular act or omission. This is based on the premise that a party should not be held responsible for consequences that could not reasonably have been foreseen. When the active and immediate cause of the injury is an independent agency, therefore, the first inquiry is whether the

intervening cause and its probable consequences were such as could reasonably have been anticipated by the original wrongdoer.

The rule is stated in RESTATEMENT (SECOND) OF TORTS, sec. 411 (1965):

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

See also the comment to sec. 411(b):

b. Extent of rule. The employer of a negligently selected contractor is subject to liability under the rule stated in this Section for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, but only for such physical harm as is so caused. *In order that the employer may be subject to liability it is, therefore, necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him.* (Emphasis added).

Thus, the Restatement's position is that the same condition that made it negligent for the employer to hire the contractor in the first place must have actually caused the harm to the plaintiff. The remainder of comment (b) to sec. 411 explains this causation requirement as follows:

Thus, if the incompetence of the contractor consists in his lack of skill and experience or of adequate equipment but not in any previous lack of attention or diligence in applying such experience and skill or using such equipment as he possesses, the employer is subject to liability for any harm caused by the contractor's lack of skill, experience, or equipment, *but not for any harm caused solely by the contractor's inattention or negligence.* (Emphasis added).

*See also Mooney v. Stainless, Inc.,* 338 F.2d 127 (6th Cir.1964), which quoted comment (b) of the Restatement.

In the *Mooney* case, the plaintiff was the widow of an employee of an independent contractor hired by appellant, Stainless, Inc. The plaintiff's decedent was killed because of negligence of another employee in the erection of a tower. At the time of the fatal accident, Wood, the independent contractor, was operating a truck to which a block and tackle arrangement was attached so that the forward motion of the truck would hoist the section of tower. Wood drove the truck forward, lifting the section into place, and Mooney, plaintiff's deceased husband, climbed up the tower and secured the section with bolts. When Wood sought to back the truck so as to slacken the hoisting line and permit it to be disengaged, he allowed the truck to move forward, with the result that the line tightened and caused the top section of the tower to fall to the ground with Mooney, killing him instantly. The case was submitted to the jury on theories of respondeat superior and of negligent hiring of the independent contractor, Wood, by appellant Stainless, Inc. The jury returned a general verdict for plaintiff and the defendants, including Stainless, Inc., appealed.

The court reversed the judgment for plaintiff and ordered the cause dismissed, partly on the basis that there was no showing of negligence on the part of Stainless, Inc., in the hiring of the independent contractor which caused the death of Mooney. After quoting the comment under sec. 411(b) of the Restatement of Torts, which language at that time differed only slightly from the present language in the comment under sec. 411(b), the court stated:

In the instant case, plaintiff attempted to prove Wood's incompetence by reason of his alleged lack of equipment and lack of experience as a contractor. Two of the three towers had been erected and completed in a satisfactory manner. The accident occurred during the erection of the third tower when Wood moved the truck forward instead of backward. *The death of plaintiff's husband would*

*seem to have been caused by lack of attention or diligence on the part of Wood in operating the truck, and in permitting it to move forward, rather than by lack of experience as a contractor or by insufficient equipment. Thus, under the rationale of the foregoing quotation from Restatement, Stainless would not have been liable for this particular accident under plaintiff's second theory. [negligent hiring].* (Emphasis added).

*Mooney,* at 132.

We think the facts and holding of the *Mooney* case have particular significance and application to this case.

Keeping in mind the fact that this case was tried on the theory of negligent hiring, we now apply the principles of law stated above to the facts of this case.

No employee of the Bank was present at the time of the incident, and the only contractor the Bank hired, Cecil, was also not present on October 9, 1979 when Boggess was injured. Getzell Murrell was driving the van at the time of the accident and the evidence is undisputed that the Bank, up to the time of this occurrence, had never heard of Murrell and knew nothing of his employment by Cecil. It is obvious that even though the Bank did not inquire as to whether Cecil had a criminal record and did not look into his driving record, knowledge of these histories had nothing whatever to do with the accident and would not have prevented it. Cecil's criminal conviction and driving record did not contribute in any way to Boggess' unfortunate injury.

There was also evidence that Murrell had a criminal conviction, but there was no evidence of Murrell's driving record. The Bank, it must be remembered, knew nothing of Murrell's criminal conviction nor of his driving record because the Bank did not know of Murrell's existence, or that he had been hired by Cecil, until after this occurrence. Moreover, it is somewhat absurd to suggest that a conviction for theft would cause Murrell to be a bad or negligent driver.

These facts compel the conclusion that there was no cause in fact between the hiring of Cecil by the Bank and the injury to Boggess, and that Boggess' injury was not foreseeable by the Bank. It is obvious that the Bank's hiring of Cecil did nothing but furnish the occasion which eventually made the injury possible. It might just as well be argued that Boggess' default on the note, which triggered the whole series of events, was a proximate cause of the October 9, 1979 occurrence. *See City of Bishop v. South Texas Elec. Co-op.,* 577 S.W.2d 331 (Tex.Civ.App.—Corpus Christi 1979, no writ). In affirming the trial court's take nothing judgment on the grounds that proximate cause was not established, the court in *Bishop* said:

> It is well settled in Texas that a prior and remote cause cannot be made the basis for an action for damages if it did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if the injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have happened but for such condition.

■ The cause in fact of Boggess' injury was not the hiring of independent contractor, Terry Cecil, nor his criminal conviction or driving record. The cause in fact was the negligent and reckless driving of Getzell Murrell, an independent contractor or agent, hired by an independent contractor. Moreover, it is obvious that the Bank could not reasonably have foreseen the rather bizarre chain of events that occurred between the time of the hiring of Cecil and the injury to Boggess.

We sustain that portion of appellant's first point of error urging that there was no evidence and insufficient evidence to support the jury's answer to Special Issue No. 2, inquiring as to proximate cause. We hold, in this respect, that under the evidence in this record, there was no evidence that the hiring of Terry Cecil by the Bank was a proximate cause of the injuries sustained by appellee.

Appellant's first point of error is sustained, and the judgment of the trial court is reversed and rendered.